Thank you. Our next case for argument this morning is United States v. Baker. All right. We are ready to go in United States v. Baker. Mr. Hillis. Mr. Hillis, it sounds like you're arguing from the bottom of a deep well. Do you perhaps have some paper covering the microphone? I don't, Judge, but I'll speak louder and lean in if this is helpful. I don't think loudness is the problem. Anyway, go ahead. Okay. I beg your pardon, Judge. The enhancement in this case is unwarranted. Under the cases that were cited by the district court, those were non-precedential decisions by this court, which of course are not controlling precedent. That fact aside, this case is factually distinguishable from the cases that the district court relied upon. So, for instance, in the Atwood case, the police saw a defendant emerge from a vehicle with a firearm, and that allowed the officer to subjectively perceive the risk that would warrant the enhancement under 3C1.2. Similarly, in Rogers, the other unpublished decision, the fact section of that case at page 638 shows that the officers again saw the defendant with a firearm. Now, Rogers later discusses how it's in a public place, but not all public places are the same. And that would bring us to another problem with the district court's reasoning in this instance, because when you leave a firearm in a public place, those circumstances alone will not warrant the enhancement. Relevant considerations such as, is the firearm loaded? Is there a bullet in the chamber? Is the safety off? Is the gun cocked? Those are all things that would be necessary considerations before imposing the enhancement. Because if those things are not present, the gun is not operational in the sense that it is prone to a, say, drop-fire discharge, as the district court worried about here. So the differences between the cases that the government cited to the district court and those that the district court relied upon are all factually an opposite. And they do not warrant the imposition of the enhancement, say, in a case like this. And I would point to the Mewkes case from the Sixth Circuit Court of Appeals, where the court considered what was the time of day? Were the police readily able to secure the weapon? Did they see the defendant brandish it in any sense? Was the gun operational? Without those things, the enhancement does not universally apply. Particularly in Mewkes, the time of day was after midnight, as was the case here. The gun was – the record did not show that the gun was loaded, that the safety was off, that a bullet was in the chamber, or that a passerby would likely get the weapon since police readily secured it after, accordingly, chasing the defendant. So all of those circumstances would warrant against the imposition of the enhancement. Mr. Hillis, the district court spent quite a bit of time on this issue, I think nine pages of transcript. And it seems to be that the arguments are exploring this distinction between danger and risk. Of course, 3C1.2 uses the word risk. Risk has potentiality to it. Danger doesn't always. Sometimes it does. Tell me how you believe Mewkes applies, given the fact that 3C1.2 uses the word risk. That gloss wasn't explored in Mewkes, as I recall it, Judge. But Mewkes talks about circumstantial evidence, and that's what all the other cases have talked about, too. So risk or danger would both be informed by the existence of objective factors, as well as the subjective perception of risk by the officer. So substitute the word danger, and I don't see how an officer would feel at danger of a firearm if he doesn't know that one is there, or how the public could be at danger of a firearm that opposes the risk of serious bodily, excuse me, poses a potential of serious bodily injury if the firearm isn't apt to be discharged because it's not loaded, the safety is on, officers immediately secure it. Call it danger, call it risk. The factors inform the analysis, and the result would be the same regardless of the term that is used. There is no danger when the necessary factors aren't present, and the record here shows that the factors that were informative of the decision did not support the enhancement. Mr. Hillis, I know you're focused on the guideline issue here, but it would be helpful to me if you could address the district court's statement to the effect that his sentence would be the same here regardless of the resolution of this guideline issue, and in particular the point the judge made. This was not just sort of an automatic protect the record kind of statement, at least as I see it. Look, Mr. Baker, you've had four, this is your fourth felon in possession conviction. The last sentence you got was six years. I'm not going to give you a lighter sentence than that, so I'm going to give you six years and a day. That seems like a certainly understandable non-guideline reason for the sentence that was imposed. Judge, I don't think even accepting that explanation that it would be adequate under ABAS or under Asbury, but let me pivot to the factuals on that for just a moment before I proceed. So when the judge is comparing the 72-month prior sentence for the revocation, the judge is not making an apples-to-apples comparison, which is highly pertinent here. So paragraph 43 of the PSR shows that my client received a 72-month sentence for the state term of imprisonment, but he was eligible for parole at the three-year mark, and then he was paroled. So in fact, he was really looking at more like a three-year sentence on that as a practical matter. Although he was subsequently had his parole revoked in that case, you can't really, I think, compare very well a term of imprisonment where there's a parole possibility in a state court. When there is no parole possibility federally, the two sentences are very different. And there's no principle that says, once you get a prior term of incarceration, every case later, the ratchet works upwards, you're always going to get the same answer. Of course, there's no such rule, but it seems to me like a pretty easy rationale to understand. It would be, Judge, but it doesn't account for the factual difference between the prior sentence that Your Honor mentioned, and is reflected in paragraph 43 of the PSR. So there has to be an explication by the judge that shows his statement is more than merely inoculating the result to appeal proof the decision, that there's a reasonable explanation, a detailed analysis that would show the parallel result. And I don't think that you can get there when you're comparing a 72-month sentence in the state court where there's parole, and there's a 72-month sentence here. We're essentially doubling the sentence federally than what was given prior. And so it is not a marginal increase designed for deterrence. It's a substantial increase above the sentence that was once given. And with that, I would reserve the balance of my time. Thank you. Certainly, counsel. Mr. Appleby-Battacargi. Good morning, and may it please the court. Suresh Appleby-Battacargi for the United States. The district court correctly applied the reckless endangerment enhancement on the facts of this case. I'd like to start with the assertion that there was a dispute over whether the firearm was loaded. And I'd respectfully submit there was no such dispute. Defendant admitted that fact in paragraph 6 of his plea agreement. He admitted it under oath at the Rule 11 colloquy. That fact appeared in the PSR and was not challenged by either party during the sentencing hearing. And so there was no dispute that the subject firearm was loaded. I'd now like to address defendant's arguments that before it could find that the firearm posed a risk of accidental discharge, the district court had to first inquire about whether there was a chambered round or the safety was enabled. And respectfully, your honors, I would submit that that argument was forfeited, if not outright waived by defendant, based on the following exchange at page 18 of the sentencing transcript, which is in the government's appendix, also at page 18. At lines 12 through 18, the district court inquires about whether there are inherent risks associated with flinging a loaded firearm, regardless of whether someone's running or whether someone's stationary. And so the district court asks, if you're stationary, somebody is just standing there and they take a loaded handgun and they whip it across the room, isn't that inherently dangerous? I mean, it could go off, it seems to me. And defense counsel responds, well, under these circumstances, yes, it could go off. And so that factual concession is made before the district court goes on to make its thorough findings regarding the various types of risks posed in this case. And I'd like to briefly review those findings, which were predicated on either the undisputed facts in the plea agreement, the undisputed assertions in the pre-sentence investigation report, or on the concession of defense counsel that this firearm did in fact pose a risk of accidental discharge, as seen at page 18 of the transcript. So here the district court concluded, first, it's inherently dangerous to throw a loaded handgun, especially while running. The district court concluded the loaded gun could have gone off while the defendant was removing it from his waistband and preparing to throw it. The district court concluded that by discarding the firearm in a residential backyard, the defendant created a substantial risk that someone could find it and get hurt. The district court concluded that the accidental discharge of the firearm could have hurt somebody, including the pursuing officers. And finally, the district court concluded that a person under the influence, as the defendant was, with a loaded firearm is more dangerous than a sober person. Let's explore that for a second, because as I understand the transcript, the district court asks, was he intoxicated? Yes. And then I think you respond, he was intoxicated. Your Honor, according to the arrest report, I'm reading from the transcript, and according to the testimony of the arresting officers, they smelled a strong scent of alcohol, and part of what led them to observing it was the drinking in the public right of way. When the judge is making his findings, he says under the influence, obviously there's a huge spectrum there. There is a spectrum there, and that's why, Your Honor, I'm tethering myself to the words that the district court used. I understand that we have argued that he was intoxicated, but the district court used perhaps the more broadly encompassing term of under the influence. Is there anything else in the record that would color where Mr. Baker would fall on that spectrum? There's one additional fact that he, while running from the officers, tripped and fell. That's something that could be attributed to being under the influence. Perhaps he snagged his foot somewhere, and it's unrelated to him being under the influence. But what I do want to emphasize is that the under influence finding was just one of a number of facts the district court relied on, and the constellation of facts supporting its conclusion that this was reckless endangerment. The idea that the district court was relying solely upon unpublished or simply persuasive authorities is unfounded. The government cited in the district court relied upon United States versus EASER. That's a 2009 published decision of this court in which the court found that reaching for a loaded gun creates a substantial risk of bodily injury to another, and that that risk is even greater when the person handling the gun is running. Both of those factual predicates are here. The defendant certainly reached for the gun when he pulled it out of his waistband, and he was running. Those are two undisputed facts in the record. And so, again, under the constellation of facts the district court cited here, all of which were tethered to undisputed facts in the plea agreement or in the PSR or the defendant's counsel's concessions at the sentencing hearing, there was sufficient evidence to establish reckless endangerment, particularly by a preponderance of the evidence. With what time remains, I want to address the harmless error argument. And for that, I would direct the court's attention to pages 77 through 79 of the sentencing transcript. Judge Hamilton, you cited the substance of the discussion at those pages where the district court first starts with its analysis of the 3553A factors, and the ones principally animating its decision here are, first, the history and characteristics of the defendant. The defendant standing before the court at sentencing in this case was convicted of his fourth substantive offense of being a felon in possession of a firearm, to say nothing of the other offenses that landed him in criminal history category 6. And so this was the fourth time that the defendant, despite being on notice from three prior arrests, charges, and convictions for this conduct, ended up in the same place. And the court noted that the Cook County sentence that was imposed for the prior felon in possession case was 72 months and emphasized twice between pages 77 and 79 of the transcript. I can't give you less than what you got last time because, and this is another 3553A factor the court relied upon, I need to deter you from doing this again, and I need to deter others from doing this again. So the history and characteristics of the defendant, the need for general deterrence, the need for specific deterrence were the principal animating concerns behind the court's sentence here of 72 months and one day. And then in the next breath, page 79, the court says, it would impose the same sentence notwithstanding the disputed guidelines enhancement. The idea that this was an inoculating statement is simply not supported by the record. The court specifically identified the disputed guidelines issue here, the application of 3C1.2. The court, in the lead up to identifying the disputed guidelines issue and saying that it would impose the same overall sentence, explicitly stated its 3553A rationale and explained the parallel result. And that parallel result was tied critically to the defendant's history and characteristics. This is his fourth felon in possession conviction. And the court was locked in on giving him at least the same sentence he got before. Here it was the same sentence he got before plus one day. What about the parole point? The parole point, Your Honor, was not considered by the district court. What I will note is that the court invited the parties at the end of the hearing, this is at page 93, to ask for any additional clarification, any clarification about the decision it was making, and neither party asked for additional clarification, so the court submitted on its 72 month and one day sentence. And parole or not, Your Honor, the court was clear that here it was trying to send a message to the defendant himself as well as to the general public that this kind of conduct was not acceptable, that this kind of conduct constituted a serious crime meriting, in the court's view, a serious sanction. But again, in the court's view, a proportionate sanction given the history of the defendant that was appearing before it. And so the government submits that the court committed no substantive error, or I should say procedural sentencing error in its application of guideline section 3C1.2, and even if the court erred, any such error was harmless, and so the government respectfully requests that the court affirm the judgment and the sentence below. One quick question, if I could. Yes, Your Honor. I think I read in the briefs that the probation officer's recommended sentence here was disclosed to the parties. Yes, it was. Is that routine in the Northern District of Illinois at this point? It depends on the judge, Your Honor. The district judge at the time of the change of plea usually enters an order directing probation to disclose the recommendation or not, and that's what probation follows. Thank you. Thank you, Your Honors. Thank you, Counsel. Anything further, Mr. Hillis? Yes, Your Honor. Probation did not recommend this enhancement, and a lot of what the district court did, it did on its own without much advance notice by way of its reasoning to Mr. Baker's lawyer. So on-the-spot answers I don't think are especially informative in the valid legal positions here. And let me make a point or two about waiver. The government didn't argue waiver in its brief, so I don't think it can assert waiver now. That's a waiver of waiver, and the law is good on that for us. My client's lawyer didn't waive anything on his behalf, on my client's behalf, by answering questions. The district court did an awful lot of speculation without evidence about the inherent risks of firearms and drop fires and things like that without taking into account what the evidence is. We asked the court to take judicial notice under Rule 201C of the lack of risks relative to the Walther PPS firearm here. The government hasn't responded to say that those things are irrelevant or not valid considerations for this court. I think they undermine a lot of the district court's conclusions, if not its reasoning in various points. The police in Easter, let's mention Easter for a moment, perceived a risk because the defendant drew the firearm that they saw. Here, they saw my client throw a dark object that they immediately recovered. They didn't know it was a firearm. They perceived no risk. This case is not the same as Easter or the other cases that all talk about officers subject to perception of risk or danger, Judge Brennan, because they are not seeing a firearm. When we do look at cases that are truly on all fours, we look at the record here compared to the record in Dukes. And if this court comes to a conclusion that the enhancement applies here, the result would be very different relative to the defendants in the Sixth Circuit where the enhancement based on this record, with all the unprovens by the government, whose burden it was to establish the necessary record evidence to support the enhancement. It just wasn't made. And district courts are not allowed, as a matter of due process, to speculate facts into existence. And then England is one case that we can set off the top of our heads. And there are others, of course. There's a due process right to be sentenced on reliable information to speculate about the dangers if you're running and you throw a firearm. Mechanically, I don't know how foot speed increases risk of danger. I don't know how drunkenness may increase the risk or danger. But the district court can't speculate about those things anymore, about the mechanicals of the firearm. We ask this court to vacate and remand. Thank you very much. The case is taken under advisement.